## FREDERICK HUNT, Administrator &c., *versus* JOHN NEVERS, Administrator &c.

Where collateral security is received for a debt, with power to convert the security into money, and the proceeds of the security equal or exceed the amount of the debt, the debt is *de facto* paid, for the same person being the party to receive and pay, no act applying the money to the debt is necessary, but the law makes the application.

S. H., the holder of a promissory note made by W. for $500, indorsed it to J. H., who, at the same time, gave the following receipt : " When S. H. shall pay me his note of $100, given by him this day to me, then I will deliver up to him a note of $500, which he has indorsed over to me." W. paid his note to J. H., and subsequently both S. H. and J. H. died. It was *held*, that upon the payment of W.'s note, the law, without any act on the part of J. H., applied so much of the amount as was necessary, in payment of the note of S. H.; that the residue might be recovered by the administrator of S. H. as money had and received to his use ; that such action might be maintained without a special demand ; but that, without such a demand, interest could be recovered on such residue only from the time of the service of the writ.

ASSUMPSIT. The declaration consisted of the general counts. Plea, the general issue.

At the trial, before *Putnam* J., it appeared, that Samuel Hunt, the plaintiff's intestate, was the holder of a note for the sum of $500, made by Peter Wheeler ; that Samuel Hunt, on June 18, 1829, indorsed the note, which was payable to himself, to Jonathan Hunt, the defendant's intestate that Jonathan Hunt, at the same time, gave the following receipt, viz. " When Samuel Hunt shall pay me his note of

$100, given by him this day to me, then I will deliver up to him a note of $500, which he has indorsed over to me, against Peter Wheeler. Jonathan Hunt. Also, $100, as per his note of this date, August 31, 1829 ; " that Wheeler paid his note to Jonathan Hunt, on May 11, 1830 ; and that Jonathan died in May 1832, and Samuel, in December 1832.

It further appeared, that Jonathan had not demanded the $200 of Samuel, and that Samuel had not tendered that sum to Jonathan, or taken any step to redeem Wheeler's note, previously to its payment by Wheeler.

The defendant contended :

1. That the receipt proved a mortgage of Wheeler's note, defeasible on the payment by Samuel Hunt, of his two notes.

2. That as no time was appointed within which the note of Wheeler was to be redeemed, it could only be redeemed in the lifetime of the mortgager.

3. That the defendant held the proceeds of Wheeler's note, as Jonathan Hunt had held the note itself.

4. That a demand and notice ought to have preceded the action.

The judge ruled, that Jonathan Hunt was accountable for the surplus, as for property pledged.

The plaintiff contended, that in estimating the amount of the damages, interest should be cast on the balance due his intestate, from the time of the payment by Wheeler, to the time of the judgment, allowing a reasonable time to the defendant's intestate to pay over such balance. But the jury were instructed,.if they should find for the plaintiff, to cast the interest on the balance, only from the date of the writ.

The jury returned a verdict for the plaintiff, for the sum of $408 It appeared, that the jury understood the judge to have adopted the principle contended for by the plaintiff, in relation to interest, and to have framed their verdict accordingly. The verdict was thereupon amended by the direction of the judge.

If the first instruction of the court was wrong, a new trial was to be granted. If the direction of the court in regard to the verdict was erroneous, the whole Court were to restore the verdict to its original state, and to give judgment accordingly.

*I. C. Bates*, for the defendant. The indorsement of Wheeler's note was a transfer of the *legal title* to it ; it was therefore a *mortgage* of the note, and not a *pledge* ; *Homes* v. *Crane*, 2 Pick. 607 ; Story on Bailm. 197 ; and the proceeds of the note were consequently held as a mortgage.

As no time was limited by the receipt, within which the condition was to be performed, it could be performed in the lifetime of the mortgager only.  Co. Lit. 208 *a*, 208 *b* ; Bac. Abr. *Mortgage, D ; Cortelyou* v. *Lansing*, 2 Caines's Cas. 209.   The condition was not performed in the lifetime of the mortgager, and therefore the legal title to the proceeds of the note, vested in the mortgagee, or his representatives, discharged of the condition. *Brown* v. *Bement*, 8 Johns. R. 75 ; *Ackley* v. *Finch*, 7 Cowen, 290 ; Story on Bailm. 197.   It was the duty of Wheeler to pay the note at its maturity, and of the defendant to receive payment as the holder ; and the property in the note, or in the proceeds, could not be changed without an offer by the mortgager to perform the condition. *Garlick* v. *James*, 12 Johns. R. 146 ; *Cortelyou* v. *Lansing*, 2 Caines's Cas. 209 ; *Brown* v. *Bement*, 8 Johns. R. 75.

But if the Court should be of a different opinion upon these points, then we contend that a demand and notice should have preceded the commencing of the action. *Morgan* v. *Sargent*, 1 Bos. & Pul. 58 ; *Topham* v. *Braddick*, 1 Taunt. 572 ; *Jefferies* v. *Sheppard*, 3 Barn. & Ald. 696 ; *Woodbridge* v. *Morse*, 5 N. Hamp. R. 520 ; *Taylor* v. *Bates*, 5 Cowen, 376 ; *Ex parte Ferguson*, 6 Cowen, 596 ; *Williams* v. *Storrs*, 6 Johns. Ch. R. 353 ; *Ferris* v. *Parris*, 10 Johns. R. 285. There is no ground for charging the defendant with interest previously to the service of the writ.  *Dodge* v. *Perkins*, 9 Pick. 387.

*Wells* and *Alvord*, for the plaintiff, to the point that this was a *pledge* of Wheeler's note, and not a *mortgage*, cited *Homes* v. *Crane*, 2 Pick. 610 ; *Bowman* v. *Wood*, 15 Mass. R. 534 ; to the point, that whether it was a pledge or a mortgage, the right of redemption vested in the personal representatives of the pledger or mortgager, 4 Dane's Abr. 168 ; Story on Bailm. 236 ; *Cortelyou* v. *Lansing*, 2 Caines's Cas. 206 ; *Ratcliff* v. *Davis*, Yelverton, (Metcalf's edit.) 179,

note ; 2 Kent's Comm. 452 ; to the point, that upon the payment of Wheeler's note the law applied the proceeds in discharge of the claim of the mortgagee or pledgee, and that the mortgage or pledge thereupon ceased to be such, and the mortgager or pledger became entitled to the residue of the proceeds, *Randall* v. *Rich*, 11 Mass. R. 494 ; *Parks* v. *Hall*, 2 Pick. 210 ; to the point, that no demand or notice was necessary, before commencing the action, *Randall* v. *Rich*, 11 Mass. R. 494 ; *Miller* v. *Miller*, 7 Pick. 133 ; *Dodge* v. *Perkins*, 9 Pick. 393 ; and to the point, that the plaintiff was entitled to interest from the time of the payment by Wheeler, deducting a reasonable time to be allowed to the defendant's intestate for the payment of the balance due to the plaintiff's intestate, *Dodge* v. *Perkins*, 9 Pick. 368.

SHAW C. J. delivered the opinion of the Court.    There is *Sept. 26th* perhaps no branch of law, which has more unsettled points and difficulties, than that which embraces the subject of pledges and mortgages of personal property ; and this is in some measure manifested by the learned and ingenious arguments in the present case.    But the Court are of opinion, that upon its peculiar circumstances, the case may be decided upon grounds in a good degree free from doubt.

Although the indorsement of Wheeler's note to Jonathan Hunt transferred the legal interest in it, and vested the property in the indorsee, this is not inconsistent with the position, that it was a defeasible interest, or an interest in trust, and that a defeasance or declaration of trust was contained in the receipt given by Jonathan Hunt to Samuel Hunt, at the same time.

Had the note remained in specie, and uncollected, until the death of one or both of the original parties, or had the receipt of Jonathan Hunt stipulated to redeliver the note, on payment of the sum for which it was security within any limited time, and the money had not been paid or tendered within the time, the case would have presented the question whether this was a pledge or a mortgage, and in either case, whether the whole right of the original owner was forfeited and the right of redemption gone, in either of these events.    But in the actual case, these questions do not arise.    No time was

limited for the redemption ; no demand or tender was made on either side ; and both parties were living when the money was paid.

What then was the effect of this payment ? The indorsement of the note, and receipt or defeasance, are to be taken together as one transaction. Every contract is to be construed according to the subject matter, and the intent of the parties ; and where not expressed, such intent must be inferred from the relation in which they stand to each other and the obvious purposes they have in view. The indorsement of the note was intended to place the amount at the control of the indorsee, and to operate as security for the sum advanced. It could only operate as such, by being collected, and it must therefore have been the intention of the parties, that he should collect it. Indeed it is argued by the defendant's counsel, in another part of his case, that it was the duty of the promisor to make and of the holder to receive payment, when the note became due, and this is urged to show, that the condition of the note was not voluntarily changed by the holder. The note indeed might have been redeemed before it was due, by Samuel, by payment of the advance, but as no time was stipulated for such redemption, it depended on his will, and if he did not elect to redeem, as in fact he did not, then by the effect of the original agreement, the money, the amount of Wheeler's note, was to be paid to Jonathan Hunt, and in pursuance of this agreement it was paid to him.

It is a general rule, that where collateral security is received for a debt, with power to convert the security into money, this is specifically applicable to the payment of such debt ; the same person being the party to pay and receive, no act is necessary, and the law makes the application ; if the proceeds equal or exceed the amount of the debt, it is *de facto* paid ; no action would lie for it ; and proof of these facts would support the defence of payment. It is like the ordinary case of a banker or factor, receiving securities of his principal, by indorsement or otherwise, on which he has a lien for his advances ; when received, the proceeds operate as payment *pro tanto*. It follows as a necessary consequence, that an amount equal to the existing debt only can be applied ; the

debt is then satisfied and discharged, and if there be a surplus, it is money had and received to the use of the indorser, the beneficial proprietor of the note. It is money which the defendant cannot hold *ex æquo et bono*, and therefore the law implies a promise to pay it over. *Randall* v. *Rich*, 11 Mass. R. 494.

Another ground taken was, that the plaintiff was not entitled to recover in this action, until a special demand proved. It is a familiar general rule, that on the common money counts, proving the money had and received to the plaintiff's use, and laid out and expended at the defendant's request, raises an implied promise to pay on demand, and as matter of form the count closes with a *sæpe requisitus*, but no proof of demand is necessary to support this averment, and the service of the writ is deemed a demand. This is a fiction of law, and may sometimes tend to hardship and injustice by subjecting a defendant to costs, which he would have avoided by payment of the debt ; but it is adopted as a useful general practical rule, not often liable to abuse, because creditors are so uniformly disposed to receive their dues from debtors willing to pay, and tending on the whole to promote justice by saving creditors the necessity of making a formal demand, to be proved by witnesses, which would be generally fruitless, often impossible, and still oftener, when made, a signal to debtors to avoid legal process. But whether a wise rule or not, it is settled by universal practice. There are exceptions to this rule, in regard to factors, agents, attorneys, and often where, by usage or contract, the receivers of money are liable only on special demand made. *Clark* v. *Moody*, 17 Mass. R. 145 ; *Topham* v. *Braddick*, 1 Taunt. 572. But this case falls under none of these exceptions ; it is the ordinary case of debtor and creditor, where money is due on demand. The statute of limitations would begin to run from the time of the receipt of the money. *Miller* v. *Miller*, 7 Pick. 133.

Upon the subject of interest, we can perceive nothing to take this case out of the ordinary rule, that where money is payable on demand and there is no contract or usage requiring it and the defendant is not a wrongdoer in acquiring or detaining it, interest is to be computed from the service of the

writ only.  The defendants' intestate was not an agent bound to give special notice, and he had no title to any compensation for services.  As the service of the writ was the only demand made, the jury were rightly instructed to compute interest from that time.

